IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CR-147-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| PORFIRIO BENITEZ HERNANDEZ | ) | |
| | ) | |

This matter is before the Court on Defendant's motion to suppress. Defendant Porfirio Benitez Hernandez moves to suppress statements made to officers and evidence obtained during a search of his home and outbuilding. For the reasons stated herein, Defendant's motion is DENIED.

## INTRODUCTION

On March 15, 2012, DEA and other law enforcement officials were conducting surveillance on Defendant Hernandez's residence due to suspected illegal narcotics activity. In the course of their surveillance, agents observed Hernandez driving away from the residence in a vehicle with improperly displayed registration credentials. During the ensuing traffic stop, Agent Jeremy Ammons cited Hernandez with the offenses of No Operator's License and Improper Display of Registration. Following his issuance of these traffic tickets, Agent Ammons informed Hernandez that "he was free to leave."Agent Ammons, then re-approached Hernandez and asked him if he had any narcotics, U.S. currency, or firearms in his vehicle. Hernandez responded in the negative and then consented to Agent Ammons' request to search the vehicle. During the subsequent search Agent Ammons' K-9 unit alerted indicating the presence of drugs. However,

no narcotics were discovered in the vehicle. At that point, DEA Agent Mike Franklin, a fluent Spanish speaker, arrived and began conversing with Hernandez. Hernandez admitted to Franklin that he was illegal resident of the U.S. and that he had a firearm at his residence. Hernandez then consented to a search of his residence and noted that two additional firearms were located within. Upon arriving at Hernandez's residence, DEA agents observed a locked gun cabinet in the living room. Hernandez provided the agents with keys to this cabinet. One firearm was located to the right of the cabinet and several rifles were stored within. Another rifle was later found in one of the residence's bedrooms. Hernandez admitted that he purchased and possessed these firearms.

During the search of his residence, Hernandez provided agents with a key that unlocked a shed in the residence's backyard. Agents discovered a kilogram of cocaine buried in that shed. Hernandez stated that he had been aware of the cocaine's location, but stated that he was storing it for an individual who had threatened him if he refused to do so. Hernandez also admitted that the same individual was paying him to store the cocaine.

Based on the evidence discovered during this search Hernandez was charged with (1) knowingly and intentionally possessing with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1); and (2) knowingly possessing a firearm while being in the U.S. illegally and unlawfully in violation of 18 U.S.C. § 922(g)(5)(a).

## DISCUSSION

Defendant's motion to suppress statements made to officers and evidence obtained during a search of his home and outbuilding is DENIED. To delineate the boundaries for police conduct in routine traffic stops the Fourth Circuit applies the Supreme Court's *Terry* stop analysis. *U.S. v. Rusher*, 966 F.2d 868 (4th Cir. 1992)(citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Under that approach the court considers "whether the officer's action was justified at its inception and

whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Here, defendant concedes that the initial traffic stop was proper, but asserts that agents' ongoing questioning of Hernandez was outside the scope of a permissible *Terry* stop and, therefore, the resulting statements and evidence are subject to suppression under the Fourth Amendment exclusionary rule.

Traffic stops, such as the one at issue, may be prolonged by either the reasonable suspicion of a crime or by the driver's consent. *U.S. v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). In determining whether an officer-suspect interaction is a detention or a "consensual encounter" the Fourth Circuit applies the Supreme Court's reasoning in *Florida v. Bostick*, 501 U.S. 429 (1991). *See* U.S. v. Rusher, 966 F.2d 868, 877 (4th Cir. 1992) (citing *Bostick*). The *Bostick* court noted that the appropriate inquiry in assessing such an interaction is whether a reasonable person would feel free to decline the police officer's requests thereby terminating the encounter. *Bostick*, 501 U.S. 429 at 434. If a reasonable person would have felt such freedom, the interaction was a consensual one that did not trigger Fourth Amendment limitations. *Id.* If, at any point, an interaction loses its consensual nature then it will be subject to Fourth Amendment scrutiny. *Id.* Moreover, the defendant's consent must be voluntarily given as determined by the totality of the circumstances. *Rusher*, 966 F.2d at 877 (citing *Schneckkloth c. Bustamonte*, 412 U.S. 218, 227 (1973)).

In *Rusher*, the court found that the citing police officer effectively concluded a traffic stop when he informed the defendant that he was "free to go." 966 F.2d at 877. This statement effectively released the defendant from any officer-imposed detention and, since he was free to leave, the remainder of the defendant's interaction with the police officer was consensual. The *Rusher* court did not apply the exclusionary rule to the drugs, cash, and firearms that were

recovered during the ensuing search because the circumstances indicated that the defendant's consent had been voluntarily given.

Here, Hernandez asserts that the scope of the search at issue was impermissible because Agent Ammons' re-approach and continued questioning of Hernandez was a prolonged detention for which Ammons lack a reasonable and articulable suspicion. The lack of such suspicion is inconsequential in light of the defendant's consent to continued questioning and to the search of his home. The defendant repeatedly offered his consent to several officers' requests and continued freely conversing with agents even after he had been told that he was free to leave. Agent Ammons' statement dismissing Hernandez was such that a reasonable person would have felt free to decline further interaction. Nevertheless, Hernandez consented to the continuation of the search no less than four times. First, although the traffic stop had concluded and he was free to leave, Hernandez consented to Agent Ammons' search of his vehicle. Second, the defendant consented to Agent Franklin's request to search his residence and outbuilding. Third, upon their arrival at his residence Hernandez provided agents with keys to his gun cabinet impliedly consenting to a search of its contents. Finally, Hernandez also provided agents with keys to his outbuilding - again indicating his implied consent to a search.

Hernandez has not alleged that any of the officers used force to coerce him into his continuing consent. Defendant has not alleged that he was prevented from leaving either by suggestion or force. Further, any language barrier that might have prevented him from fully understanding the effect of his consent was resolved by the arrival of Agent Franklin, a fluent Spanish speaker - to whom Hernandez revealed more than to any other officer. Taking into account the totality of the circumstances, these facts indicate that the defendant's consent was voluntarily given. Furthermore, the defendant has consistently emphasized to this Court that the

initial traffic stop had concluded before officers began questioning Hernandez about his possession of guns and drugs. This contention actually supports the government's argument that the officer-suspect interaction had been refreshed and was ongoing subject to the defendant's consent. Because the defendant's consent was freely offered the Fourth Amendment exclusionary rule does not apply to this matter.

## CONCLUSION

Defendant's motion to suppress is DENIED.

SO ORDERED, this __7__ day of September, 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE